```
                UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF TENNESSEE
                      NASHVILLE DIVISION
```

PHG TECHNOLOGIES, LLC,            )
                                  )
         Plaintiff,               )
                                  )     No. 03:05-0630
v.                                )     JUDGE ECHOLS
                                  )
THE ST. JOHN COMPANIES, INC.,     )
                                  )
         Defendant.               )

<u>**MEMORANDUM**</u>

Pending before the Court is Plaintiff PHG Technologies, LLC's Motion to Dismiss Counterclaims Alleging Unfair Competition, Violation of the Tennessee Consumer Protection Act, and Unjust Enrichment (Docket Entry No. 110), to which Defendant The St. John Companies, Inc., has responded in opposition (Docket Entry No. 117), and Plaintiff has replied (Docket Entry No. 126).

PHG Technologies, LLC ("PHG") brought this action against The St. John Companies, Inc. ("St. John") seeking to enforce its design patents on medical label sheets, U.S. Patent Des. No. 496,405 S ("the '405 patent") and U.S. Patent Des. No. 503,197 S ("the '197 patent"), and to protect its "EasyID" trademark. The Court previously entered a preliminary injunction against St. John, but denied the parties' motions for partial summary judgment. Thereafter, St. John filed its First Amended Answer to Complaint and Counterclaims, asserting thirteen (13) counterclaims against PHG. (Docket Entry No. 102). Three of St. John's counterclaims are at issue in this Motion to Dismiss: Unfair Competition (Count

XI), violation of the Tennessee Consumer Protection Act (Count XII), and Unjust Enrichment (Count XIII). The Court will consider St. John's allegations of fact in connection with the Court's discussion on each of the counterclaims PHG moves to dismiss.

## I. STANDARD OF REVIEW

In evaluating St. John's Counterclaims under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all of St. John's allegations and resolve all doubts in its favor. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). The Court should not dismiss the Counterclaims unless it appears beyond doubt that St. John cannot prove any set of facts in support of its claims that would entitle it to relief. See id. at 12. A Counterclaim must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. See Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).

## II. ANALYSIS

**A. Unfair Competition (Count XI)**

According to St. John, its claim for unfair competition is spelled out in paragraphs 108, 111-113, 149, and 151-152[1] of its First Amended Answer to Complaint and Counterclaims. Ordinarily,

---

[1]Although St. John does not specifically mention paragraph 150, it is included within Count XI, and the Court will consider it. St. John also briefly references paragraph 161, but that paragraph was not incorporated by reference into Count XI, so the Court will not consider it.

2

the Court would not quote extensively from the pleading, but the unique nature of St. John's allegations warrants quotation of the identified paragraphs as follows:

> 108. St. John is informed and believes that PHG in the course of advertising and selling its software represents, among other things, that "[e]very application of EasyID includes EasyLABEL which generates fully customizable, easy-to-print patient identification labels . . .", "EasyID lets you create an exact electronic replica of a paper document. A simple, user-friendly interface allows even first-time users to develop most documents" and that it "[a]llows you the opportunity to create your own documents and administer your own system." These representations lead purchasers to believe that its [sic] software customers can easily reconfigure print fields to print various label formats.
>
> 111. On information and belief, PHG refuses to so modify software it has sold, charges exorbitant prices to do so, or unreasonably delays in doing so, when requested to do so by its customers, thereby unfairly and unlawfully forcing said customers to purchase label sheets of the format and label arrangement that it asserts are monopolized by its patents.
>
> 112. On information and belief, PHG, acting in bad faith, threatens and has threatened, sues and has sued, St. John and other competitors in the sale of label sheets that can be used with the printer software it has sold.
>
> 113. On information and belief, PHG, by its alleged above conduct, has engaged in an unfair and unlawful scheme to prevent lawful free market competition in the market for medical label sheets, so as to be able to sell its own label sheets at inflated and exorbitant prices substantially exceeding fair free market prices.
>
> 149. Plaintiff's false representations and promises, as alleged above, that the software may be modified for use with label sheets offered for sale by third parties and its failure to follow through on its representations and promises, and its refusal to so modify software it has sold, its charging of exorbitant prices, or unreasonably delaying in modifying the software was done in order to

prevent customers from using non-PHG label sheets with its software are acts [sic] by which PHG has thwarted competition.

150. These actions by PHG constitute an unfair and unlawful scheme to prevent fair and lawful competition in the market for medical label sheets, so as to disadvantage and injure St. John to be able to sell its own label sheets at prices substantially exceeding fair free market prices.

151. PHG's bad faith threats and lawsuits in which PHG has asserted that the '405 and '197 Patents are infringed by label sheets that include the only format and label arrangement that is usable with certain aspects of the software it sells are also made in an attempt to prohibit competition. Upon information and belief, PHG does not so inform purchasers of its software and leads such purchasers to believe that the software it sells will allow purchasers thereof to obtain labels that are compatible with software that is freely available in a competitive market and at a competitive price.

152. These actions have caused and are causing damage and irreparable injury to St. John in the form of lost sales and lost customers. The foregoing acts of Plaintiff constitute unfair competition and will continue unless enjoined by this Court. St. John has no adequate remedy at law.

(Docket Entry No. 102.)

PHG contends St. John has not stated a viable claim for unfair competition, as no Tennessee court has recognized an unfair competition claim based on allegations similar to those made by St. John, and there is no reason to believe a Tennessee court would extend the tort of unfair competition to encompass St. John's allegations. See Dade Int'l, Inc. v. Iverson, 9 F.Supp.2d 858, 862 (M.D. Tenn. 1998) (dismissing claim for unfair competition in part because court was "unable to find any case law which has

4

specifically extended the tort of unfair competition to a case similar to the one at bar"). PHG asserts that Tennessee courts have recognized the tort of unfair competition in two circumstances: first, in cases in which the defendant engaged in conduct that "passed off" its product or service as that of the plaintiff, the defendant acted with intent to deceive the public as to the source of the product or service offered, and the public was actually confused or deceived, see <u>Sovereign Order of St. John of Jerusalem v. Grady</u>, 119 F.3d 1236, 1243 (6th Cir. 1997); <u>Hickory Specialties, Inc. v. Forest Flavors Int'l, Inc.</u> 12 F.Supp.2d 760, 766 (M.D. Tenn. 1998), and second, in cases in which an employee used confidential information to his employer's detriment, see <u>B & L Corp. v. Thomas & Thorngren, Inc.</u>, 917 S.W.2d 674, 681 (Tenn. Ct. App. 1995); <u>B & L Corp. v. Thomas & Thorngren, Inc.</u>, 162 S.W.3d 189, 215-216 (Tenn. Ct. App. 2004). Because St. John's allegations do not fall within either of these two types of unfair competition claims, PHG asks the Court to dismiss Count XI under Rule 12(b)(6) for failure to state a claim.

St. John responds that "unfair competition" is actually a general category of torts under Tennessee law because <u>B & L Corp.</u>, 917 S.W.2d at 681, recognized that "[u]nfair competition is a generic name for several related torts involving improper interference with business prospects." St. John reads <u>Dade Int'l, Inc.</u> to hold that a claim of unfair competition exists where (1)

5

the defendant engages in *any* conduct that amounts to a recognized tort, and (2) the tort deprives the plaintiff of customers or other prospects.² Finally, St. John points out that the Supreme Court of Tennessee adopted the tort of intentional interference with business prospects in Trau-Med of America, Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002), and suggests that its own pleading in this case meets the elements of that tort: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant has knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant intends to cause the breach or termination of the business relationship; (4) the defendant has an

---

²St. John overstates the holding of the case. Judge Nixon recognized that the Tennessee Court of Appeals had extended the tort of unfair competition beyond the context of "passing off" only in B & L Corp., where an employee breached a fiduciary relationship by using the employer's confidential information to the employer's detriment. He reasoned that the facts presented in the case before him did not fit into either of those two categories.

Because B & L Corp. relied on Prosser and Keeton in its opinion, however, Judge Nixon considered § 130 of the treatise, which describes the tort of unfair competition as arising "when the defendant engages in any conduct that amounts to a recognized tort and when that tort deprives the plaintiff of customers or other prospects." Dade Int'l, 9 F. Supp.2d at 862. The court concluded "it appears that the tort of unfair competition is simply a remedy for economic loss that is incurred from an underlying violation of a tort or a breach of contract[,]" but the court nonetheless held the plaintiff failed to allege a cognizable cause of action for violation of any tort independent of the tort of unfair competition, particularly where Tennessee had not at that time recognized the tort of interference with prospective economic advantage. Id.

6

improper motive or uses improper means; and (5) damages resulting from the tortious interference.

Taking St. John's allegations, quoted above, as true, St. John makes no claim that PHG "passed off" its products or services as St. John's, to bring the claim within <u>Sovereign Order of St. John of Jerusalem</u>, 119 F.3d at 1243, nor does St. John's pleading fit within the form of unfair competition recognized in <u>B & L Corp.</u>, 917 S.W.2d at 681, where an employee used confidential information to his employer's detriment.

Assuming that the specific tort of intentional interference with business relationships recognized in <u>Trau-Med of America, Inc.</u> falls within the general category of "unfair competition," St. John's attempt to state such a claim fails. Nowhere does St. John specifically allege: (1) that it has an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) PHG has knowledge of St. John's relationships and not a mere awareness of St. John's business dealings with others in general; or that (3) PHG intends to cause the breach or termination of St. John's business relationships. Moreover, St. John alleges that PHG acted in bad faith by filing this lawsuit against St. John, but that is a far cry from alleging that PHG's predominant purpose in interacting with its own clients is to injure St. John. <u>See</u> <u>id.</u> at 701 n.5 ("with regard to improper motive, we require that the

7

plaintiff demonstrate that the defendant's predominant purpose was to injure the plaintiff[]"). Consequently, the Court concludes that St. John fails to state a claim for unfair competition, and Count XI of St. John's Counterclaim will be dismissed with prejudice under Rule 12(b)(6).

**B. Tennessee Consumer Protection Act (Count XII)**

PHG next moves to dismiss St. John's claim for unfair or deceptive acts under the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-104, on the grounds that St. John has not met the heightened pleading standard for fraud, St. John lacks standing to assert such a claim against PHG, the TCPA does not apply to allegations of unfair competition or anti-competitive acts, and St. John's specific allegations do not constitute unfair or deceptive acts or practices.

In addition to paragraphs 108 and 113 of the Counterclaim quoted in Section A above, St. John pleads as follows:

> 155. PHG's advertisements and false promises and representations made in conjunction with the sale of its software as alleged above imply that its software customers can easily reconfigure print fields to print various label formats. Upon information and belief, PHG does not enable such reconfigurations. As such, PHG is advertising goods or services with the intent not to sell them as advertised.

(Docket Entry No. 102.) St. John further alleges that PHG's acts constitute unfair or deceptive practices in violation of the TCPA, that PHG acted willfully and knowingly, that St. John has suffered

8

damages, and that St. John has no adequate remedy at law. (Id. ¶¶ 157-159.)

The Tennessee General Assembly chose not to include within the TCPA's prohibitions unfair competition or anti-competitive acts. Bennett v. VISA U.S.A. Inc., 198 S.W.3d 747, 754-755 (Tenn. Ct. App. 2006); Sherwood v. Microsoft Corp., No. M2000-01850-COA-R9-CV, 2003 WL 21780975 at *33 (Tenn. Ct. App. July 31, 2003). To the extent St. John rests its TCPA claim, not on anti-competitive conduct, but solely on PHG's allegedly false promises and representations to customers in connection with the sale of PHG software, St. John lacks standing to assert such a claim on behalf of PHG customers who may be disenchanted with PHG's products or services. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992); Petty v. Daimler/Chrysler Corp., 91 S.W.3d 765, 768 (Tenn. Ct. App. 2002) (observing standing issue requires careful judicial examination of the allegations made to ascertain whether the particular plaintiff is entitled to adjudication of the particular claims asserted). If any customers believe that PHG has engaged in unfair or deceptive practices towards them, then such customers may have standing to bring TCPA claims against PHG, but under the facts presented, St. John does not have standing.

For these reasons, St. John fails to state a claim under the TCPA, and Count XII will be dismissed with prejudice. PHG's

9

request for attorney's fees incurred in defending this claim is denied.

**C. Unjust Enrichment (Count XIII)**

Finally, PHG moves to dismiss St. John's quasi-contractual claim for unjust enrichment. See Bennett, 198 S.W.3d at 755. The elements of an unjust enrichment claim are: (1) a benefit conferred by the plaintiff on the defendant; (2) defendant's appreciation of the benefit; and (3) acceptance of the benefit under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of the value of the benefit. Freeman Indus., LLC v. Eastman Chemical Co., 172 S.W.3d 512, 525 (Tenn. 2005). "The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust." Id.

St. John alleges that "PHG has benefited in each and all of the acts alleged herein including increased sales from St. John customers who were prevented from using alternatives to PHG's labels. As a result, [PHG] has been unjustly enriched to its benefit and to the detriment of St. John." (Docket Entry No. 102 ¶ 161.) St. John further alleges that the "above acts of PHG has caused St. John to lose sales of label sheets and to lose profits on such sales and [PHG] has unlawfully enriched itself." (Id. ¶ 162.)

10

In support of its claim, St. John relies on <u>Freeman Industries</u>, in which the Supreme Court of Tennessee stated that "to recover for unjust enrichment, a plaintiff need not establish that the defendant received a direct benefit from the plaintiff. Rather, a plaintiff may recover for unjust enrichment against a defendant who receives *any* benefit from the plaintiff if the defendant's retention of the benefit would be unjust." <u>Id.</u> at 525 (emphasis in original) (citing <u>HP1 Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.</u>, 545 N.E.2d 672, 679 (Ill. 1989)). St. John points this Court to the parenthetical the Supreme Court placed behind its citation of <u>HP1 Health Care Services</u>. The parenthetical referenced the Illinois court's holding "permitting recovery of a benefit transferred to the defendant by a third party where the third party mistakenly gave the benefit to the defendant instead of the plaintiff, where the defendant procured the benefit from the third party through wrongful conduct, or where the plaintiff's claim to the benefit is superior to the defendant's claim[.]" <u>Freeman Industries</u>, 172 S.W.3d at 525.

Under <u>Freeman Industries</u>, St. John must allege and prove that it conferred a benefit, either directly or indirectly, on PHG. St. John does not allege that it directly conferred a benefit on PHG. Although St. John relies on <u>HP1 Health Care Services</u> to now contend that it indirectly conferred a benefit on PHG through its medical label customers, St. John has not alleged that its customers

11

*mistakenly* gave a benefit to PHG which should have been St. John's, or that St. John's claim to sales of medical labels is superior to PHG's claim.

Rather, the essence of St. John's claim is found in paragraph 111 of the Counterclaim, in which St. John alleges that PHG refuses to modify its software, charges high prices to make modifications, or unreasonably delays in making modifications, "thereby unfairly and unlawfully forcing said customers to purchase label sheets of the format and label arrangement that [PHG] asserts are monopolized by its patents." (Docket Entry No. 102 ¶ 111.) Although St. John alleges that these facts amount to wrongful conduct on the part of PHG, enforcement of lawful patent rights does not amount to wrongful conduct as a matter of law. Therefore, for these reasons, the Court concludes that St. John fails to state a claim for unjust enrichment against PHG, and Count XIII will be dismissed with prejudice.

At the conclusion of its Memorandum, St. John seeks leave to amend its complaint to add allegations of inequitable conduct. Because this request is contained in a legal memorandum and not in a separate motion, as required by Local Rule 7.01, the request is denied.

### III. CONCLUSION

For the reasons stated, Plaintiff PHG Technologies, LLC's Motion to Dismiss Counterclaims Alleging Unfair Competition,

12

Violation of the Tennessee Consumer Protection Act, and Unjust Enrichment (Docket Entry No. 110) will be GRANTED. The counterclaims filed by Defendant The St. John Companies, Inc., for Unfair Competition (Count XI), violation of the Tennessee Consumer Protection Act (Count XII), and Unjust Enrichment (Count XIII) (Docket Entry No. 102) will be dismissed with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE